Mr. Chief Justice Johnson delivered the opinion of the court. The only questions presented by the record relate to the propriety of the instructions, and the correctness of the verdict. The first instruction given for the defendant, and objected to by the plaintiff, was “That a defect in property when sold, which is obvious to^every observer, and requires no skill to detect it, is not covered by express warranty.” This instruction, as a general proposition, is absolutely correct; but, when applied to the facts of this case, is considered rather abstract, and, as a matter of course, was calculated, in a.greater or less degree, to mislead the jury. The disease, with which the negro in question was afflicted, was not of such a nature as to be perceived by every unskilled eye, and consequently could not come within the scope of the general rule asserted by the instruction. The effects of the disease, it is true, could easily be seen, and indeed seem to have been remarked by nearly all the witnesses; but the disease itself was a secret infirmity, and could be ascertained and determined only by one possessing skill. It is conceded that a general warranty will not extend to guard against defects that are plainly and obviously the object of one’s senses, as if a horse be warranted perfect and wants either a tail or an ear, unless the buyer in this case be blind. But if a horse is warranted sound and he wants the sight of an eye, though this seems to be the object of one’s senses, yet, as the discernment of such defect is frequently a matter of skill, it hath been held that an action on the case lieth to recover damages for this imposition. See Com. on Contracts, and the cases there cited. The second instruction complained of is that, “ A bill of sale ■nsade after the contract, and delivered upon the sale of personal, property, without evidence that it was expressly agreed between the parties that the bill of sale should be executed at an after time in fulfilment of the original contract, is without consideration and void.” This direction, whether well founded in point of law or not, was certainly not warranted by the facts of the case. It is manifest, from the testimony, that the making of the bill of sale was .not a matter of subsequent agreement, but that, on the contrary, it was expressly stipulated for at the •time of the original contract. When the parties came to con•summate their contract and to execute the bill- of sale, the question arose as to who should execute it, and the proof clearly shows that it was a part of the original contract that the defendant should do it. The third and last instruction is not exceptionable, as a general rule, but it is a matter of doubt whether it should not have been given in a different shape in order to avoid misleading the jury upon the merits. Instead of the general direction given, it would have been safer, and we think more strictly in accordance with the law, that the jury should have been told that, in case they should find, from the evidence, that no consideration passed to the defendant, that then they should find for him. The next point relates to the sufficiency of the testimony to sustain the verdict. That the negro described in the declaration was warranted sound by the defendant, is abundantly proven by the bill of sale and the parol testimony adduced by the plaintiff. The question now to be decided is, whether such a consideration passed between the parties as to uphold and support the •contract of warranty. The bill of sale contains an express acknowledgment of the consideration of one thousand dollars. This, it is admitted, is not conclusive evidence of the fact, yet it is prima facie, and of course all-sufficient for the purposes of the plaintiff until rebutted and completely overturned by competent proof. The only witness offered to impeach the consideration, was William Foster. He evinced no knowledge of the matter whatever, but simply gave his opinion in respect to it. He stated that he did not know of the defendant’s ever having’ received any consideration, and this was the extent of his evidence. This statement was utterly incompetent, as it was a mere matter of opinion, and that too without any showing as to what it was founded upon. It did not im, air the force of the case made by the bill of sale in the slightest degree,, and consequently there was a total failure in the defence upon that point. It only remains now to be seen whether the allegation of un-soundnass was sustained by the proof. The testimony of Israel Ross is strong in support of this allegation. He stated that he went himself to purchase the girl Hannah, while she was in the possession of Poindexter, and before Jordan purchased her, and that, as she came up to him, he saw that there was something the matter with her, and that one side of her head seemed smaller than the other, and that he declined buying her. William Poindexter also testified that he had known the negro girl Hannah always ; that his father raised her; that, after she got large enough to walk, she always sucked her thumb; that she-appeared to walk one-sided, held her arm crooked, and always sucked her thumb; that she could straighten out her arm, but always carried it crooked; that she was in that condition when¡ Jordan got her, &c. The last witness called by the plaintiff to-this point was Dr. Collins, who testified, in substance, that he was at Jordan’s sometime in May, 1846 ; that he saw a likely mulatto girl come out of a negro-cabin at some distance from' him ; that he discovered her limping; that he asked Jordan if that was one of the negroes he had got of Poindexter, to which he replied that she was; that he then asked him what was the matter, that he said he did not know, and asked him to examine her. He further stated that he did examine her, and then pronounced the disease paralysis, and that she held her arm crooked and rather dragged her leg in walking. He also stated that he considered it extremely doubtful whether she would ever recover; that she would be worth nothing to him, and that she could be of little value to any one; and that her affliction never could have arisen from the sucking of her thumb. He also stated that persons not in the habit of examining, or- not acquainted with the disease, might not notice it; that the disease sometimes comes on as sudden as thought, and gradually at other times ; that no one could see the negro without discovering the defect, but that persons not skilled could not tell what caused it. The chain of testimony tending to establish the fact of unsound ness, we consider so well connected as to leave no room for a rational doubt. We are not advised whether the jury arrived at their conclusion from the instructions given by the court, or whether they were governed solely by the testimony in the cause. If the erroneous instructions had not been given, and it was clear that they rested their verdict alone upon the facts, we might feel some hesitancy in disturbing the verdict, although greatly against the weight of evidence; but, when it is considered that they might have been misled by the instructions, and also that the preponderance of testimony is greatly against the verdict, we feel that no alternative is left, and that a new trial ought to have been awarded. It is therefore considered and adjudged that the judgment of the Washita circuit court herein rendered, be and the same is hereby reversed; and that the cause be remanded, with instructions to be proceeded in according to law and not inconsistent with this opinion. Mr. Justice Scott did not sit.